IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015

**STATE OF TENNESSEE v. JUAN E. HENDERSON**

**Appeal from the Criminal Court for Sullivan County**
**Nos. S60,784 & S60,785   James Franklin Goodwin, Jr., Judge**

---

**No. E2015-00886-CCA-R3-CD – Filed January 27, 2016**

---

The Defendant, Juan E. Henderson, appeals as of right from the Sullivan County Criminal Court's revocation of probation and order that he serve the balance of his seven-year sentence in confinement.  On appeal, he asserts that the trial court abused its discretion when it revoked his probation.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Stephen W. Wallace, District Public Defender; and William Andrew Kennedy, Assistant District Public Defender, for the appellant, Juan E. Henderson.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Barry Staubus, District Attorney General; and K. Kaylin Render, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 22, 2012, the Defendant was indicted for one count of aggravated burglary and one count of theft of property valued at $500 or less in Case Number S60,784.  See Tenn. Code Ann. §§ 39-14-403, -103.  On that same date, he was also charged with aggravated domestic assault in Case Number S60,785.  See Tenn. Code Ann. § 39-13-102.  The Defendant subsequently pled guilty as charged in both cases,[1] and the trial court sentenced the Defendant to seven years for the aggravated burglary conviction, eleven months and twenty nine days for the theft conviction, and seven years

---

[1] The transcript of the guilty plea submission hearing was not included in the appellate record.

for the aggravated domestic assault conviction. The sentences were set to run concurrently, with the sentences to be served on supervised probation following the service of eleven months and twenty-nine days in the county jail. The judgments of conviction were entered on September 20, 2013.

A violation of probation warrant was issued on January 24, 2014, alleging that the Defendant had violated the conditions of his probationary sentence in the following respects: failure to inform his probation officer of his change in address and failure to observe special conditions imposed by the court, including completion of an alcohol and drug evaluation, completion of a mental health evaluation, and payment of restitution.

A second violation of probation warrant was issued on June 25, 2014. That warrant alleged that the Defendant had violated the conditions of his probation in the following ways: failure to obey all federal, state, and local laws after having been arrested for possession of marijuana in Bristol, Virginia on April 28, 2014 and failure to report all arrests to his probation officer.

Both warrants were executed on March 18, 2015. On May 8, 2015, the trial court held a revocation hearing. At the hearing, the Defendant pled guilty to violating his probation as alleged in the January 24, 2015 warrant.[2] He indicated his understanding that he was waiving his rights to plead not guilty and to have a hearing where the State would be required to prove the facts underlying his violation by a preponderance of the evidence. Further, the Defendant agreed that he understood that he was waiving his rights to be present at the hearing and represented by counsel, to confront and cross-examine witnesses, to call witnesses on his own behalf, and to testify on his own behalf. The Defendant acknowledged that he was giving up those rights "knowingly, freely[,] and voluntarily." Defense counsel stipulated to the facts set forth in the probation violation warrant as a basis for the plea.

The Defendant testified that, at the time he pled guilty in 2013, he stated that he would move to South Carolina to live with his mother upon his release. However, his mother subsequently refused to let him live with her. He also admitted that "at some point in time [he] also caught a charge over in Virginia and did a little bit of time over

---

[2] The court stated that the Defendant had "already [pled] guilty to the June 25, 2014 warrant." Other than this acknowledgement, there is no further evidence in the record regarding the Defendant's guilty plea with respect to that warrant.

there." Additionally, the Defendant admitted that he had not reported to his probation officer at any time since his release in late 2013.[3]

When asked where he had been living since his release, the Defendant responded that he was homeless. He also stated that he suffered from mental health issues and that he had spoken with "Frontier Health" in an attempt to get help for those issues and, in particular, to help "[g]et [him] back on [his] medication." The Defendant indicated his hope that the court would allow him to go to "Hay House" where he could receive medical help and have a place to live. The Defendant testified that if he was "up under some leadership and some guidance and . . . on [his medication,]" he thought that he could "do better in society."

On cross-examination, the Defendant admitted that he had not reported to his probation officer following his release from jail. The Defendant stated that he had been homeless in the Bristol area since his release. He testified that he "thought about" calling his probation officer and apprising him of the situation, but he "didn't have the number."

Officer Joe Boyd testified that he was employed by the Office of Probation and Parole and that he had been assigned to the Defendant's case. According to Officer Boyd, he was not aware that the Defendant's release date was in November 2013, and he did not learn of the Defendant's release until December 16, 2013. At that point, the Defendant had not yet contacted him by phone or reported physically to the office. Officer Boyd testified that, upon his release, the Defendant would have been informed that he was required to report to his probation officer and given an address where he should report. Officer Boyd sent a letter to the Defendant's last known address in Orangeburg, South Carolina. On December 26, 2013, the Defendant's mother left Officer Boyd a voicemail informing him that she had received his letter and that the Defendant was not living with her. She indicated that the Defendant was supposed to be living in Memphis with an aunt.

The court orally revoked the Defendant's probation, noting that he had "been gone for two, almost two years." The court further stated that it was "confident" that the Defendant had been informed that he was required to report to the probation office following his release. Additionally, the court found that the Defendant had "picked up new charges for which he's been convicted" while on absconder status. On May 15, 2015, the trial court entered an order revoking the Defendant's probation and ordering his seven-year sentence into execution. This timely appeal followed.

---

[3] The exact date of Defendant's release is unclear from the record, although both parties assert he was released in November 2013.

ANALYSIS

On appeal, the Defendant argues only that the trial court abused its discretion when it revoked probation and ordered his sentence into execution. The Defendant concedes that, because he admitted to his probation violation, the judge "clearly could revoke [his] probation." However, the Defendant asserts that the trial judge's revocation was an abuse of discretion based on the Defendant's homelessness and mental health issues, noting that he had "no shelter, means of transportation[,] or access to medication and treatment." Furthermore, the Defendant contends that there was no evidence to support a finding that he was actually instructed to report to the probation office following his release from jail. The State disagrees.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), 35-311(c). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

The decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in the light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

Even considering the Defendant's limitations due to homelessness and alleged mental health issues, the Defendant provided no sufficient explanation for his complete failure to adhere to the terms of his probation for almost two years following his release. The special conditions of the Defendant's probation ordered both mental health and alcohol and drug abuse evaluations. However, the Defendant squandered those

-4-

opportunities to receive help, and he now attempts to excuse his failure to comply with the terms of probation on his underlying mental health and drug abuse issues. Also, the Defendant asserts that there was no testimony at his revocation hearing establishing that he was told that he needed to report to a probation officer following his release. However, this argument is undermined by the Defendant's own testimony that he "thought about" calling his probation officer following his release, but he "didn't have the number." The Defendant pled guilty to violating the terms of his probation, indicating his understanding of the rules of his probation and his violation of multiple rules. Additionally, Officer Boyd testified that upon his release from jail, the Defendant would have been instructed to report to his probation officer and given an address where he should report.

In sum, the Defendant admitted that he violated the terms of his probation in several respects, and the trial court acted well within its discretion when it revoked the Defendant's probation and ordered that the balance of his seven-year sentence be served in confinement. Therefore, the Defendant is not entitled to relief.

<u>CONCLUSION</u>

Based upon the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE